Judge Winter has recused himself from the first case, Cerny v. S.E.C. Accordingly, Judge Carney and I will hear that case first. We will then take a short recess so that we can set up and get Judge Winter on the phone and we will then hear the remaining four cases on the calendar. And so, we'll hear from Mr. Cerny. Good morning, Your Honors. Good morning. Good morning. First of all, I have to say I'm at somewhat of a disadvantage here. Cliff Buxbaum cannot appear, and he researched and wrote virtually all of the submissions. I funded and edited them. So, I begin. Before this court is a matter that arises from a whistleblower award claim filed at a time. This is a unique case in that our claim is directly related to and intertwined with the commission's unreasonable delay to act on the syntax fraud. We bring two opening questions before the court. The remaining answers may manifest themselves. The first one is the commission's decision to provide actual notice is discretionary. Petitioners argue they abused that discretion by deciding, among other things, not to inform us of the notice of covered action. Mr. Cerny, can I ask a question about that? My understanding is that the agency published its decision on the Office of Whistleblower website in 2012. Was there any reason that you were unable to access that? We do go into that in detail in our briefings.  And yes, that is something that we feel that since we were known to them, and there is direct notice and there is constructive notice, that since we were known to them and we did not know we were whistleblowers at the time, we did not know that it was up to us to look at this website that was posted constructively as opposed to being notified because we were in direct contact with them. So there was no physical obstacle to you accessing the website, just that you didn't know that you should be monitoring it, is that right? Because you believe the agency? No, there was no physical reason why we couldn't access the website. We just didn't know that we were whistleblowers at the time. It was something that the SEC, we believe, had in their control to work with us as far as whistleblowers. There was no TCR, which is where they actually used to notify whistleblowers that there is a covered action. The covered action came up and it was not known to us that there was something that we had to do. The SEC's decision not to open the TCR was a violation of commission procedures. And among other things, was a direct cause or contributed to inadequate notice of a potential right to a claim. We understand that explaining why a claim was filed two days or two years at a time requires highly unusual and materially extenuating set of circumstances. There is good reason that is worthy and warrants this court's discerning consideration. We are not questioning the interpretation of ambiguous regulations or statutes where Chevron or our word come into play. We're not here to argue the adequacy of constructive notice as a matter of law. The agency has determined in response to our appeal, they are not obligated to provide actual notice. We are not addressing whether they're obligated or not. We merely urge this court to seek the unexplained rationale, given the information available to the SEC at the time, to reach their decision not to notify us of the covered action. We have- Mr. Cerny. Yes. You're out of time. You have two minutes that you saved for rebuttal. Would you like to use them now? I'd like to finish. Can I use a portion of that, Your Honor? Okay. Go ahead. We have demonstrated in our application that we met all criteria when faced with the late filing, including being timely to file papers once we knew of the OWB program. Informing the only parties with a potential property interest in the form of a OWB claim who are known to and were in contact with the SEC at the time the no-cow was posted is in no way prohibited and was not reasonable. The current OWB procedure is now actual notice. However, the control to that notice remains reliant on the commission deciding to follow procedure by opening and compiling whistleblower information in the TCR system, which takes us to the second matter, the TCR. The commission relies on the TCR process as the final word to reach the final determination of what information was before the commission, what actions the staff took on tips provided, among other things, including triggering the notice process. In violation of commission procedure, there is no TCR relating to the petitioners. Our presence here today is another indication of just how important the TCR system is. It should be clear that we had not been sucked up in the vacuum created by the SEC's decision not to pursue claims in syntax brilliance bankruptcy. The reverse merger fraud would have gone undetected. The fraudulent debtor enterprise was effectively concealed for what it was. Attorney, you've now gone over your whole five minutes. I appreciate it. All right, we'll let you have a minute for rebuttal, but we'll hear from the SEC. May it please the Court, my name is Stephen Yoder, and I represent the Securities and Exchange Commission. Petitioners Charles Cerny and Cliff Buxbaum do not dispute that they filed their whistleblower award claims nearly two years late. The only question they raise on this appeal is whether they demonstrated extraordinary circumstances that would trigger the commission's discretionary authority to excuse their delay. The commission reasonably concluded that they failed to meet this burden because they did not show that the reason for the delay was beyond their control. In particular, they have not shown that it was beyond their control to learn about the commission's whistleblower program or the application deadline, both of which were published on the commission's public website. Unless the Court has any questions. Mr. Yoder, I do have a question. Yes. Does the commission ever give actual notice, like direct notice, to whistleblowers with whom it's been dealing? I believe that there are cases where the staff may have mentioned it to people that they were closely working with, but it's not something that's required under the commission's rules. Well, I'm not asking whether it's required, but I'm just asking whether formal actual notice is ever given by the commission. I'm not aware of any publication setting forth that that notice was actually given or recording that as a matter of public record, but it would not surprise me if that did take place in particular whistleblower matters where the staff was working closely with someone. So there's no process or requirement of actual notice. You rely on the punitive whistleblowers to monitor the website and make their own determination about when they might have a claim. Yes, that's correct, Your Honor. And as I understand, Mr. Cerna, he doesn't dispute the adequacy of the constructive notice through the commission's website. I may have misunderstood him, but I believe he said that as a legal matter he doesn't dispute that. And unless the Court has any further questions, we're prepared to rest on our brief. Thank you. Thank you, Your Honors. Mr. Cerny. The SEC's abuse was not notifying us of the notice. Even though they may not be obligated to notify us, they could have notified us, but instead made a deliberate decision not to notify. We seek explanation, given the information the SEC had at the time, the SEC's rationale to reach the conclusion, the decision not to notify us, and was that decision reasonable? Your argument? Additional abuse was not performing a review of our claim with a complete record, which according to the SEC in Release 77730, without a TCR, there's no complete record. So there's always a situation where they review the merits on late filings, and without a TCR, there's no documentation, there's no information to review. There was no TCR created for us. And that's a question that I believe this Court needs to understand. Thank you. We will reserve decision, and we will take about a five-minute recess.